IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LARRY DON HOOKER,**

      **Plaintiff,**

    v.                                                Civil Action No. 2:15cv3
                                                       (Judge Bailey)

**PRUNTYTOWN CORRECTION
CENTER; DEBRA MINNIX, Warden;
and WEXFORD HEALTH SOURCES,
INC.,**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On January 5, 2015, the *pro se* plaintiff, then an inmate[1] incarcerated at Pruntytown Correctional Center ("PCC") Grafton, West Virginia, initiated this case by filing a filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. §1983. Pursuant to a Notice of Deficiency by the Clerk of Court, the plaintiff corrected certain deficiencies with his pleadings. He was granted permission to proceed as a pauper on February 2, 2015; however, because his funds were so insufficient, his initial partial filing fee was waived although he was assessed the full filing fee. On March 18, 2015, plaintiff paid an initial partial filing fee of $23.76.[2]

On February 2, 2015, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer

---

[1] Plaintiff is no longer incarcerated, having been released on parole from prison on February 18, 2015. See Dkt.# 12 and the West Virginia Division of Corrections' ("WVDOC") online offender search at http://www.wvdoc.com/wvdoc/OffenderSearch/tabid/117/Default.aspx.

[2] A review of the docket indicates that plaintiff was released from PCC approximately two weeks after being granted permission to proceed as a pauper, and other than the $23.76 initial partial filing fee, plaintiff has only paid one additional $16.02 payment toward the $350 filing fee.

was entered, and summonses were issued for each of the defendants. On March 4, 2015, defendants Debra Minnix ("Minnix") and PCC filed a motion to dismiss with a memorandum in support. Because the plaintiff was proceeding *pro se,* the Court issued a Roseboro Notice on March 9, 2015. On April 2, 2015, plaintiff moved for an extension of time to respond to defendants Minnix and PCC's dispositive motion. On April 7, 2015, the defendants Minnix and PCC filed a response in opposition. On April 21, 2015, defendant Wexford Health Sources, Inc. ("Wexford") filed a Motion to Dismiss with a memorandum in support. On April 28, 2015, another Roseboro Notice was entered, advising plaintiff of his right to respond to Wexford's dispositive motion and correcting the docket to reflect Wexford's true name. By Order entered the same day, plaintiff's motion for an extension of time was granted over defendants Minnix and PCC's objection. Despite having been granted the extension of time, plaintiff has never filed a response to either dispositive motion; a review of the docket indicates that the certified mail return receipts show he received copies of both Roseboro Notices and a copy of the Order granting the extension.[3]

This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 2.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, without specifically alleging deliberate indifference to serious medical needs, an Eighth Amendment violation, or negligence, the plaintiff asserts that on August 30, 2014, while working in the PCC kitchen, *en route* back to the kitchen from a bathroom break, he

---

[3] See Dkt.# 17, 29 and 30.

2

slipped and fell on a wet floor,[4] badly injuring his right hip. A correctional officer ("C.O.") directed him to medical, where he was told that "they could not do anything" until the doctor returned on September 2, 2014. Plaintiff alleges he was in so much pain that night that he was unable to sleep and was "crying all night." He advised the C.O. on duty, who called medical on his behalf, only to be told that they could do nothing for plaintiff, not even provide Ibuprofen, until a doctor saw him. Plaintiff alleges that by September 1, 2015, his leg hurt so badly the only relief he could obtain was by taking a hot shower and letting the water run down over his hip and leg. That night, he had to "beg and cry to medical" for an Ibuprofen to relieve his pain.[5] On September 2, 2014, he was seen by a doctor, who told him "he had to order . . . an x-ray for . . . [his] leg, instead of taking . . . [him] to the hospital."[6] Plaintiff contends that by September 3, 2014, his hip and leg were so swollen, he could not sleep or even get out of bed. He was finally taken to Ruby Memorial Hospital on September 5, 2014, but by then, infection in his hip had spread into his bloodstream, and from there, to his eye[s], lungs and heart. He alleges that his

> condition was so bad they did not think I would make it. They had to do Laser eye surgery to clean out the infection in my eyes. Then they had to do hip surgery to clean out the infection. After a week in the hospital I was transferred to Mt. Olive. I was there for a week and the infection set in again on my hip, so I had to go back to the hospital again to do surgery to clean in out again. The reason the infection came back was because they put a PIC line in my left arm so the antibiotic could clean out the infection. Instead it caused a clogged artery in my left arm. They then had to put a PIC line in my right arm. I will have to take blood thinner for the rest of my life due to the clogged artery in my left arm. I have a scar on my right hip because it took twelve (12) stitches to close the wound. I then spent 5 weeks in Mt. Olive's medical unit until I got better and they were sure the infection was gone.

---

[4] In a copy of a notarized statement attached to his complaint, plaintiff alleges that there were no signs posted warning of the wet floor. Dkt.# 1-1 at 2.

[5] It is unclear from the complaint whether he actually received Ibuprofen on this day, or only requested it.

[6] Plaintiff's claims are so unclearly stated that it is not apparent whether an x-ray was actually done on this day or any other; moreover, if one was done, what the results of it showed.

3

Dkt.# 1-1 at 1.  On November 7, 2014, plaintiff was sent back to PCC.  He contends that "[a]ll of this could have been prevented if medical would have taken me to the hospital when it first started. Now I have to walk with a limp."[7]  He provides the names of three inmates who could attest to the fact that he "lay in bed for 5 days in pain with an infection going all through my blood stream before medical would do anything."[8]

Plaintiff maintains that filed administrative remedies over the issue, but he did not attach copies of them and it is unclear from the complaint whether he fully exhausted his administrative remedies.

As relief, plaintiff seeks injunctive relief in the form of "proto calls [sic] for moping [sic] and waxing floor's no [sic] wet signs; "more demand for Patient's [sic] with Emergency Go [sic] to Hospital;" and "future medical treatments pain suffering [sic]." Further, he requests a jury trial and monetary damages of One Million Dollars ($1,000,000.00) for his injuries.

**B.  Defendants Minnix and PCC's Motion to Dismiss**

In their motion, defendants Minnix and PCC argue that plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because

1) plaintiff has failed to exhaust his administrative remedies;

2) the court lacks subject matter jurisdiction over plaintiff's claims, because plaintiff's complaint does not allege a substantial federal claim;

3) the defendants have only been sued in their official capacity and thus are entitled to Eleventh Amendment immunity; further, defendant Minnix is entitled to qualified immunity, because plaintiff has not alleged she violated any law in performing her duties; and

4) plaintiff's claims are so insufficiently-pled that they fail to state a claim under §1983; PCC has not even been named as a defendant in the complaint and defendant Minnix, despite being named as a defendant, is not mentioned anywhere else in the complaint, and plaintiff nowhere describes what either defendant did to violate his Constitutional rights.

---

[7] Id.

[8] Id.

**C. Defendant Wexford Health Sources, Inc.'s Motion to Dismiss**

Wexford contends that the plaintiff's complaint should be dismissed because

1) it fails to state a claim upon which relief can be granted;

2) Wexford is not a person under 42 U.S.C §1983;

3) the complaint does not state sufficient facts to support a claim for deliberate indifference to serious medical needs in violation of plaintiff's Eighth Amendment rights; and

4) to the extent that plaintiff is claiming negligence on the part of Wexford, he has failed to comply with the West Virginia Medical Professional Liability Act.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would

entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id. at 570), rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

### IV. Analysis

**A. Failure to Exhaust**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. §1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. §1997(e)(a). Exhaustion as provided in §1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). An action under 42 U.S.C. §1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S.

516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[9] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741, n. 6.

The PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006). Pursuant thereto, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Id. at 2387 (emphasis supplied). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. See id. at 2393.

In Jones v. Bock, the Supreme Court of the United States concluded that "failure to exhaust is an affirmative defense under PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). However, it is a well-established Fourth Circuit principle that "the district court's authority to *sua sponte* dismiss an *in forma pauperis* complaint frivolous [is] broad enough to permit the court to dismiss a complaint on the basis of an affirmative defense that was apparent from the facts alleged in the complaint." Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 681-82 (4th Cir. 2005)(citing Nasim v. Warden, 64 F.3d 951, 954-55 (4th Cir. 1995)).

---

[9] Porter at 524.

The WVDOC has established a three-level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1 Grievance Form with the Unit Supervisor. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level 2 decision to the Commissioner of the Division of Corrections.

Here, while plaintiff maintains that he did file administrative remedies regarding his claims, he fails to say that he fully exhausted his administrative remedies. Moreover, when asked to identify what administrative grievance procedures he filed, he merely says "report of medical" and "report by correction officer Dillard."[10] He attaches no copies of any grievances to his complaint. The defendants argue that plaintiff did not fully exhaust. Plaintiff filed nothing in response to deny this. Upon review of the record, it seems apparent that the defendants are correct, and that there is no question but that the plaintiff has failed to exhaust his administrative remedies.

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2nd Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance

---

[10] Dkt.# 1 at 4.

forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of §1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D. Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

Here, plaintiff has clearly failed to exhaust his administrative remedies. To the extent that exhaustion may be waived, plaintiff has failed to set forth any reason at all, let alone any accepted reason, to excuse his failure to exhaust. Because plaintiff is now well outside of the time limits for bringing these claims, attempting to finish exhausting now would be futile, thus his claims must be dismissed with prejudice.

## V. Recommendation

For the reasons stated, the undersigned recommends that defendant Minnix and PCC's Motion to Dismiss (Dkt.# 14) be **GRANTED;** defendant Wexford's Motion to Dismiss (Dkt.# 27) be **GRANTED;** and the plaintiff's complaint be **DENIED** and **DISMISSED with prejudice** for the failure to exhaust.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by October 14, 2015**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th

Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: September 30, 2015

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE